[No. 20296.  Department One.  May 12, 1927.]

HENRY C. EWING *et al.*, *Appellants*, v. CHARLES E. SHEPARD *et al.*, *Respondents.*[1]

[1] BROKERS (28, 33)—COMPENSATION—CONTRACT—EVIDENCE—SUFFICIENCY.  A letter signed by the owner, acknowledging that the agreed upon commissions earned for the sale of his property are as stated in the broker's letter, which claimed that the amount was $13,250, sufficiently establishes the contract in such sum, as testified to by the broker; and findings that there was no contract are not sustained (FULLERTON and MITCHELL, JJ., dissenting).

Cross-appeals from a judgment of the superior court for King county, Kinne, J., entered June 8, 1926, upon findings favorable to plaintiffs in part and defendants, in an action for a broker's commissions.  Reversed on plaintiff's appeal.

*Ryan & Desmond* and *Hartman & Hartman,* for plaintiffs-appellants.

*Poe, Falknor, Falknor & Emory,* for defendants-appellants.

FRENCH, J.—In September, 1919, the defendant Charles E. Shepard took a leasehold interest for a term of fifty years on certain described real property situated in the city of Seattle.  Later, about the beginning of the year 1924, the plaintiffs Ewing, and the plaintiff Hughes, who were real estate brokers, entered into a contract with the defendant Shepard looking to the sale and disposition of the lease.  This contract was oral and, at the time it was entered into, nothing was said

[1]Reported in 256 Pac. 71.

concerning the compensation the real estate brokers
should receive for their services. Later on, a purchaser
was found who entered into a contract of purchase of
the leasehold interest at a price of two hundred thou-
sand dollars, this sum to be paid in partial payments
extending over a long period of time, making the then
present worth of the contract of sale, according to the
calculations of the actuaries, approximately one hun-
dred twenty-five thousand dollars.

Before the consummation of the sale the question of
the amount of commission to be paid to the brokers
was taken up with the defendants, and it was agreed
that the commission should be based on the schedule of
rates fixed by the members of the Seattle Realty Board.
There is some dispute between the parties as to some
of the details of this agreement. The brokers testified
that the published schedule of the board was produced
at the meeting, and calculation made of the amount of
the commission according to an agreed interpretation
of the schedule, and that the amount then agreed upon
was $13,250. Subsequently certain letters passed be-
tween the parties. Under date of January 7, 1925, the
broker Hughes wrote one of his co-plaintiffs the follow-
ing letter:

"Mr. Henry C. Ewing, Alaska Building, Seattle, Wn.
"Dear Mr. Ewing:

"Some time ago I wrote you asking that the com-
mission arrangement on the Yale Building deal, as
agreed between Mr. Shepard, yourself and the writer,
be confirmed by letter, as is customary. Not having
heard from you, I presume the matter has slipped your
mind, so I am again taking the liberty of reminding
you of this matter. You will remember that the com-
mission agreed upon was $13,250. Later on you ad-
vised me that Mr. Shepard had requested that instead
of the commission being paid all in cash upon con-

summation of the deal, that he would like to have us accept $7,500 cash when the deal was closed and the balance of the commission equally in one and two months.

"Trusting that you will advise me very shortly I am,
"Yours very truly, Dan E. Hughes."

This letter was sent to the defendant by the Ewings and he made the following reply thereto:

"Mr. Henry C. Ewing & Company, Alaska Building,
    Seattle, Wn.
"Dear Sirs:
"Yours of today is received. I have not written you before in answer to yours of the 7th inst. because I have been very much occupied and in fact driven with many other things. There have been some negotiations looking towards getting rid of Mr. Dye. When I can do so, I will see my way clear to settling up matters.

"Mr. Dan Hughes' letter to you stated the facts as I understand them about the commission on the sale of my lease and buildings, but I cannot pay the whole of that commission at once, or at the time of the delivery of the possession to Mr. McDowall unless he pays me at that time more than our contract provides for. You have had $5,000 and Mr. McDowall is to pay $5,000 more at the time of delivery of possession, which under our present written arrangement is to be on March 31. I will pay you the balance of the commission as soon as I get sufficient cash from Mr. McDowall to discharge my obligations entirely in that respect. I trust this will be entirely satisfactory.

"Yours very truly, Charles E. Shepard."

The defendant's version of the contract was simply that he agreed to pay a commission according to the schedule of rates of the board mentioned; that the schedule was not produced at the time of the contract, and no statement of the amount was then made; that, when he received the letter of Hughes and wrote the letter in answer thereto, he had not seen the schedule, and supposed that the amount stated was in accordance

with it; that later he discovered his mistake and took the matter up with Henry C. Ewing of the firm of Henry C. Ewing and Company, following which the Ewings wrote him the following letter:

"Mr. Chas. E. Shepard, Leary Building,
        Seattle, Washington.
"Dear Mr. Shepard:
    "Re: Sale of Lease of Yale Building 3rd and Union.
    "Per my talk with you of a day or two ago, I beg to enclose you herewith Seattle Real Estate Board's printed Commission Agreement, regarding the sale of lease from which you may figure out for yourself the commission agreed upon, as marked in parenthesis on pages two (2) and four (4) on the regular basis of figuring commission. You will remember that you signed an agreement to pay the commission as per Real Estate Board's printed schedule enclosed, and I trust that same may be clear to you, but if not, then please advise and I will be glad at any time to take the matter up with you personally.
                "Yours very truly,
                "Henry C. Ewing & Company
                "By Henry C. Ewing, Manager."

The marked parts of the schedule enclosed in the letter were as follows:

"On properties located within the corporate limits of the city a commission of 5 per cent shall be charged on all sales up to and inclusive of $30,000, and 2½ per cent on all over and above that sum, except when an entire addition or a large number of lots are handled, then a minimum commission of the regular rate shall be charged, and such larger commission may be charged as agreed upon by written specific contract.
    "On ground leases or leases of buildings for the erection of which the agent negotiates exceeding a period of 15 years, the lease to be considered the same as a sale of the fee and bear the same commission as a real estate sale."

The plaintiffs founded their complaint upon the purported contract evidenced by the two letters first above quoted. There had been paid as commission to the brokers the sum of $5,000, and they demanded judgment for the difference between that sum and the sum of $13,250. In answer to the complaint, the defendant set up what he conceived to be the actual contract between himself and the brokers, and alleged that he was induced to write the letter on which the plaintiffs relied, because of artifice and fraud practiced upon him by the plaintiffs; further alleging that the commission payable under the contract as entered into was the sum of $4,000, and demanded the return of the difference between that sum and the sum paid the plaintiffs.

On the issues thus framed, a trial was entered upon before the trial court sitting without a jury, in which trial each of the parties put in evidence thought to establish their respective contentions. At the termination of the trial, the court took the case under advisement, and later on filed a written opinion in which it announced the conclusion that, while there was an employment of the plaintiffs by the defendant to find a purchaser for the leasehold interest, there was no agreement as to the compensation to be paid for the services, and that, in consequence, the plaintiffs were entitled to recover the reasonable value of such services. It further announced that there was no evidence in the record from which the court could determine such reasonable value, and reopened the case for the introduction of evidence upon the question of reasonable value. The parties thereupon introduced evidence as to such reasonable value, at the conclusion of which the court found that the services rendered were reasonably worth the sum of $10,000, and entered a judgment for the difference between that sum and the sum that

had theretofore been paid as compensation for the services. Both parties appeal.

At the time the trial court announced its conclusion that the evidence failed to show a specific contract by which the compensation due the plaintiffs could be measured, both parties protested, and thereafter offered evidence on the court's theory, with the reservation that they were not to be thereafter prejudiced by so doing. In this court they maintain their original contentions; the plaintiffs arguing that they are entitled to recover on the contract evidenced by the letters quoted, while the defendant argues that the applicable contract is a contract to pay a commission according to the official schedule of rates adopted by the Seattle Real Estate Board. There is, it is true, an argument in the briefs on the question of the reasonable value of the services, the plaintiffs contending that the sum found by the court to be a reasonable value is justified by the evidence and the defendant contending that it is not so justified. But this course was pursued, we assume, as a precautionary measure, to meet the contingency which would arise should this court adopt the theory of the trial court.

[1] It is our opinion that the trial court erred in the conclusion that plaintiffs were entitled to recover the reasonable value of the services. That undoubtedly would be the rule, had nothing more appeared than the original contract of hiring. But it is plain to our minds that, when the amount of the compensation to be paid was first broached between the parties, an agreement was reached. It is true that the rule of the Real Estate Board above quoted is not applicable to a situation such as this, but it is also true that it comes nearer covering this situation than does any other rule pro-

mulgated by the board, and we think the defendant's letter of January 15, 1925, conclusively shows that the parties then agreed that the commission should be fixed in accordance with the rule above stated, and agreed specifically upon the amount of the commission. That this rule was in the minds of the parties when they figured the commission, and that all the parties agreed that it should be figured in accordance with this rule, is further borne out by the letter of March 11, 1925, written by plaintiffs Ewing to the defendant. So that, whether the rule itself is applicable to the situation here becomes immaterial.

The judgment is reversed, with instructions to the trial court to enter judgment for the plaintiffs in the amount prayed for.

ASKREN and MAIN, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion in its entirety. I agree that the evidence justifies the conclusion that, when the amount of the commission to be paid the brokers was taken up by the parties, it was agreed that the commission should be calculated in accordance with the schedule of rates fixed by the Seattle Real Estate Board, but I cannot agree that the parties ever specifically agreed on the amount of the commission. The letter of the defendant, relied upon by the majority to sustain the agreement, was written, as the trial court found and as I think the evidence very conclusively shows, under a misapprehension of the facts. He had not then seen the schedule, knew nothing if its provisions, and assumed that the amount of the commission had been calculated in accordance with the rates therein provided. Afterwards he learned of his mis-

take, took the matter up with the brokers, when the third of the quoted letters was written to him. This letter, to my mind, conclusively shows that the defendant had correctly interpreted the agreement, and that the brokers themselves then understood that no specific agreement as to the amount of the commission had been reached prior thereto, or any agreement other than an agreement to pay in accordance with the rates prescribed by the schedule.

Nor can I agree that the schedule is inapplicable to the situation. It must mean, if it means anything at all, that, on the sale of a ground lease, the broker is to be paid the same rate of commission he would be paid had the sale been of the fee instead of the ground lease.

The real matter of difference between the parties is over the proper base to be used in calculating the commission. The brokers interpret the schedule to mean that the value of the fee, and not the value of the lease, is to be taken as the base, and as, in this instance, the fee was of the value of $500,000, they are entitled to a commission calculated according to the schedule rates on that base. The defendant, on the other hand, contends that the present value of the sale price of the lease is the base upon which the commission is to be calculated, and as the present value of the sale price is $125,000, the commission is much less than the brokers claim.

It is my opinion that the defendant's contentions are correct in the main. I cannot agree with his contention that he is only required to pay on the present worth of the sale price instead of the actual sale price, but I agree with him that the utmost he should be required to pay is the schedule rate on the actual sale price. This would amount to $5,750, and, since the brokers have been paid $5,000, a judgment should be

directed in their favor for the difference between these sums.

MITCHELL, J., concurs with FULLERTON, J.

## ON REHEARING.

### [*En Banc.*   October 13, 1927.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the opinion heretofore filed herein. The judgment is therefore reversed, with instructions to the trial court to enter judgment for the plaintiffs in the amount prayed for.